**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SHEILA WILLIAMS,**<br>**Plaintiff,**<br><br>**v.**<br><br>**DREXEL UNIVERSITY**<br>**GREGORY ALLARD,**<br>**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 26-CV-1247** |

# MEMORANDUM OPINION

Pro se plaintiff Sheila Williams enrolled in a master's program at Drexel University ("Drexel" or "the University"). She earned most of the credits that were needed to complete the program. But then life and the COVID pandemic got in the way. She stopped going to class and didn't pay an outstanding balance to Drexel. Then, overwhelmed by pandemic-related financial hardship, she filed for Chapter 13 bankruptcy. She describes how—during this time—Drexel locked her out of the student information portal, withheld her transcript, charged fees while the bankruptcy stay was in place and, when it cancelled the program in which she was enrolled, kept the information from her for four years. She is seeking money damages, her outstanding balance erased, and that Drexel transfer her credits or award her the master's degree she was seeking.

Her Complaint includes fifteen counts. Defendants, Drexel and Gregory Allard (Drexel's in-house counsel) have each moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss some of them for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Specifically, they challenge Plaintiff's claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; the automatic bankruptcy stay, 11 U.S.C. § 362(k); Pennsylvania's Fair Credit Extension Uniformity Act, 73 Pa C. S. § 2270.1 *et seq.* ("Fair Credit Act"); and, her request for a declaratory judgment per 28 U.S.C. § 2201. Drexel also

seeks to dismiss her Equal Credit Opportunity Act ("ECOA") claim, 15 U.S.C. § 1691 *et seq.*, which she raises only against it. And, although her Complaint includes a claim of intentional infliction of emotional distress ("IIED") against both Defendants, it is contested only by Allard. The Defendants further move to remand the case to state court.

## I. FACTUAL BACKGROUND

Williams' efforts to obtain her master's degree from Drexel University began in 2018, when she applied for, and was accepted into, Drexel's Master of Science in Professional Studies program. The University extended an installment-based deferred payment credit arrangement in which she was required to pay $7,590.00 per academic quarter. During the 2018-19 academic year she made timely payments and completed the vast majority of the degree's required forty-five credits. By early 2020, she only needed three courses to complete her degree: one elective and a two-part capstone sequence.

For undisclosed reasons, she missed paying tuition in January 2020. As a result, Drexel began imposing an escalating series of late fees and refused to enroll her in classes until she paid off the balance. Soon thereafter, the COVID-19 pandemic forced her to "pause" her studies in order, among other reasons, to care for family members. By Spring Quarter 2020, Drexel, still refusing to re-enroll Williams, assessed additional late fees totaling approximately $2,244.41, and "locked Plaintiff out of her student informational portal." This allegedly prevented her from accessing her academic records (including her undergraduate transcript), her payment history, and official communications with the master's program.

In 2020 and 2021, the University received approximately $31 million of emergency funding from the federal government earmarked for providing emergency financial aid to students with "unmet institutional need." However, because Williams was not a full-time student with Drexel, and was locked out of her student portal, she was never informed that these

funds were available, much less that she was potentially eligible.

In January 2021, she filed a petition for Chapter 13 bankruptcy in the Bankruptcy Court for the Eastern District of Pennsylvania. Although an automatic stay issued, as required by 11 U.S.C. § 362(a), Williams had not listed Drexel as one of her creditors. In February and March, while the automatic stay was in place, Drexel imposed yet more late fees, totaling $418.02. Williams' Chapter 13 bankruptcy plan (which did not include Drexel as a creditor) was approved in October 2021, and she began making payments according to its provisions.

Meanwhile, Drexel was still attempting to collect on Williams' account. The University declared her account in default and accelerated the balance due. In December 2023, Drexel, through its attorney Gregory Allard, filed a collection action against Williams in the Court of Common Pleas of Montgomery County. The suit demanded payment of Williams' outstanding institutional balance of $21,214.81, as well as attorneys' fees, court costs, and late fees. When Defendants served Williams with their state court complaint, she notified Allard of her bankruptcy. He quickly filed a Suggestion of Bankruptcy in the Court of Common Pleas on December 26, 2023, which placed the case in deferred status. The state court case remained in deferred status until November 13, 2024, when the bankruptcy court dismissed her case for failure to make plan payments.

On August 6, 2025, in a phone call with Drexel regarding re-enrollment, Williams, for the first time, was informed that the Master of Science in Professional Studies program had actually been discontinued "in or about 2021 or 2022."

## II. LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id.* at 210-11 (citation omitted). In so doing, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

As Williams is proceeding *pro se*, her allegations must be construed liberally at this stage. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The "relevant legal principle" therefore will be applied "even when the complaint has failed to name it." *Id.* "Missing details or superfluous material" similarly do not render a *pro se* complaint "unintelligible." *Garrett v. Wexford Health*, 938 F.3d 69, 93-94 (3d Cir. 2019). Indeed, even if it is "vague, repetitious, or contains extraneous information," a *pro se* complaint's language will ordinarily be "plain" in satisfaction of Rule 8 "if it presents cognizable legal claims to which a defendant can respond on the merits." *Id.* (citations omitted).

## III. ANALYSIS

### A. Defendants Offer No Substantive Jurisdictional Argument

The Defendants maintain that this Court lacks jurisdiction over Williams' request for a declaratory judgment to the effect that she owes no balance to Drexel for the cancelled master's program; the University must release her transcripts; and Drexel must "remove any negative credit reporting related to the disputed balance." Their argument from soup to nuts is that "[t]his Court does not have jurisdiction to rule on the validity of the debt which is the subject of a state court action, and Plaintiff does not articulate a valid claim as to why she is entitled to the relief requested." They provide no citations or cogent argument for their position as to why this Court does not have jurisdiction pursuant to 28 U.S.C. § 2201 to issue the declaratory judgment, nor how Williams has fallen short in her allegations. Absent argument, regardless of the merits of their position—and the Court takes no position one way or the other—the statement does not comply with the requirements of Local Rule 7.1 concerning motion practice in this District which require that every motion not certified as contested "shall be accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion." E.D. Pa. R. Civ. P. 7.1(c). Therefore, the Defendants' Motion to Dismiss Plaintiff's request for a declaratory judgment shall be denied. *See V.T. ex rel. M.E.T. v. N. Penn Sch. Dist.*, 2026 WL 1816215, at *4 n.5 (E.D. Pa. June 23, 2026) ("This Court has repeatedly reminded litigants that briefs not accompanied by citations to legal authority or adequate explanations of the bases for the party's arguments may be denied as being legally deficient." (internal quotations and citations omitted)).

### B. Williams' Claims are Timely

Defendants argue that the statute of limitations bars Williams' FDCPA and Fair Credit Act claims, as well as the IIED claim against Allard. The crux of Defendants' argument is that

each of these claims is predicated on the collection suit, which was filed in December 2023, and thus time-barred by the time she filed this suit in 2026. While statute of limitations arguments are technically beyond the scope of a motion to dismiss, they may be brought under Fed. R. Civ. P. 12(b)(6) when "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

**FDCPA**: Turning first to the FDCPA claim, violations of this statute include any "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. This includes, but is not limited to, attempting to collect on any amount of the putative debt (including interest or fees) which is not expressly authorized by agreement or relevant law. 15 U.S.C. § 1692f(1); *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011). As a remedial statute, the FDCPA's provisions are to be construed broadly "so as to effect its purpose." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006). The FDCPA requires plaintiffs to file their claim "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).

Defendants maintain that Williams' claim is predicated on the collection suit filed in December 2023. Under the FDCPA's one-year statute of limitations, her claims based on this alleged violation were timely up until December 2024. *See* 15 U.S.C. § 1692k(d). However, since she did not file this suit until February 2026, they argue, her claim is time-barred. *See id.*

But Williams' claims are premised on more than just the collection suit. She also alleges that Defendants have made false representations regarding the "character, amount and legal status of the debt"; impermissibly attempted to collect upon late fees which accrued during the bankruptcy stay (specifically, the late fees assessed in February and March of 2021); harassed

her during the bankruptcy stay; and, engaged in unfair collection practices, such as denying her access to her undergraduate and graduate-level transcripts, and student portal.

At least two of these allegations indicate Williams' FDCPA claim is timely. Denying access to transcripts and records as a mechanism to coerce debt repayment plausibly falls within Section 1692f's prohibition on unfair collection practices. *See* 15 U.S.C. § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."); *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245-46 (3d Cir. 2014) ("The [FDCPA's] substantive provisions . . . make clear that . . . activity undertaken for the general purpose of inducing payment constitutes debt collection activity . . . [even without] an explicit demand for payment . . ."). Moreover, this alleged violation continues into the present. As such, it does not fall outside the one-year statute of limitations. *See* 15 U.S.C. § 1692k(d).

Accordingly, Williams' FDCPA claim is timely, and Defendants' Motions shall be denied as to this claim.[1]

**Fair Credit Act**: Turning to the Fair Credit Act, actions to "enforce any liability created by this act [must be brought] within two years from the date on which the violation occurs." 73 Pa. C. S. § 2270.5(b).

Here, Williams' Fair Credit Act claim is animated by the same alleged conduct as her FDCPA claim, including allegedly false and misleading representations regarding the character and amount of the debt; attempts to collect on legally unauthorized fees; and harassment. Since Williams has adequately pleaded that some of the alleged conduct violated the FDCPA within *one* year of her suit, she has necessarily alleged a Fair Credit Act violation within *two* years. *See*

---

[1] Williams also argues that she is entitled to equitable tolling because the Defendants allegedly concealed their FDCPA violations. Because Williams' claim does not fall afoul of the statute of limitations, it is unnecessary to assess whether she is indeed entitled to equitable tolling.

*Matteo v. EOS USA, Inc.*, 292 A.3d 571, 581 (Pa. Super. 2023). Accordingly, her claim is timely and Drexel's Motion shall be denied. *See* 73 Pa. C. S. § 2270.5(b).

**IIED**: Turning finally to Williams' IIED claim against Allard, all such claims must be brought within two years of the relevant incident or conduct. *See* 42 Pa. C. S. § 5524(7); *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 80 (3d Cir. 1989) (holding that an IIED claim was time-barred under Pennsylvania's two-year statute of limitations for intentional torts); *Long v. Ostroff*, 584 A.2d 524, 529 (Pa. Super. 2004) (holding that IIED was subject to the statutes of limitations established in 42 Pa. C. S. § 5524(7)).

Here, Allard again maintains that Williams' claim is predicated on the December 2023 collection suit. Under IIED's two-year statute of limitations, her claims based on the suit were timely up until December 2025. *See id*. However, because she did not file this suit until February 2026, her claim is supposedly time-barred. *See id*.

However, Williams' claim is again animated by more than just the collection suit. In her Second Amended Complaint, she argues that the Defendants have engaged in "extreme and outrageous conduct" by cancelling the master's program without telling her; charging escalating late fees "during a global pandemic and while Plaintiff was caring for COVID-stricken family members;" failing to inform Williams of emergency financial aid from the federal government; and, denying her access to her transcripts and student portal.

Allard's arguments only concern the collection action. He offers nothing to show why an IIED claim based on this other alleged conduct would be time-barred. As such, he has waived argument on this issue. *See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) (ellipsis in original)), *cert. denied*, 513 U.S. 946 (1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes 'a

passing reference to an issue . . . will not suffice to bring that issue before this court.'") Such a lapse is fatal to his Motion, as some of the alleged conduct is facially timely. For instance, the embargo on Williams' transcripts and student portal is allegedly ongoing, and therefore well within the two-year statute of limitations. Accordingly, this claim is not time-barred, and so Allard's Motion shall be denied as to this claim. *See* 42 Pa. C. S. § 5524(7); *Laborers' Int'l Union*, 26 F.3d at 398.

### C. Williams Sufficiently Alleges a Violation of the Bankruptcy Stay

Turning next to the bankruptcy stay, Williams alleges that Drexel violated the 2021 bankruptcy stay by withholding her transcripts; levying interest on her outstanding balance; prosecuting a collection action in state court; and imposing late fees for her non-payment. Defendants counter that Williams never listed Drexel as a creditor in her bankruptcy, and, without notice, they could not willfully violate the stay. They further argue that Williams does not allege any harms resulting from the alleged violations.

When a debtor files a Chapter 13 bankruptcy petition, an automatic stay is initiated under 11 U.S.C. § 362. This stay prohibits the commencement or continuation of actions to collect pre-petition debts; taking "any act to obtain possession of property of the estate . . . or exercise control over the property of the [bankruptcy] estate"; and, taking "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. § 362(a)(1), (3), (6).

To demonstrate a violation of a bankruptcy stay, a plaintiff must show that the defendant (1) knew of the automatic stay; (2) performed actions which violated the stay; (3) acted willfully in violating the stay; and (4) they were injured by the defendant's conduct. *See* 11 U.S.C. § 362(k). A willful violation occurs where a "creditor violates the stay with knowledge that the

bankruptcy petition has been filed." *In re Lansdale Family Restaurants, Inc.*, 977 F.2d 826, 829 (3d Cir. 1992). A finding of "willfulness" does not require a finding that the creditor had a specific intent to violate the stay. *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 320 n.8 (3d Cir. 2003) (citing *In re Lansdale*, 977 F.2d at 829). When used to pressure repayment of a pre-petition debt, withholding records can constitute both a violation of a bankruptcy stay and a harm cognizable under Section 362. *In re Aleckna*, 13 F.4th 337, 346-47 (3d Cir. 2021).

The Parties do not dispute that Williams did not list Drexel as a creditor in her bankruptcy petition, or that the Defendants positively knew of the stay by, at the latest, December 26, 2023. Therefore, the dispositive question is whether the Second Amended Complaint sufficiently alleges that the Defendants violated the stay between that date and November 2024 (when the stay was terminated). During that span, Defendants allegedly denied Williams's access to her undergraduate and graduate-level transcripts, and her student portal, due to the outstanding balance. Such an embargo falls squarely within Section 362's prohibition of "any act to collect . . . or recover a claim." *Id.* at 346 (affirming that coercive denial of a complete transcript constituted a willful violation of a bankruptcy stay).

Finally, regarding harms, an "automatic stay is intended to protect" against non-monetary injuries, including coercive denial of records. S*ee id.* at 347. Therefore, Williams has pleaded a harm cognizable under Section 362, and Defendants' Motion as to this claim shall be denied.

**D. Williams Claim Under the Equal Credit Opportunity Act**

Finally, Williams alleges that Drexel failed to comply with the ECOA's notice requirements regarding its declaration of default; refusal to extend additional credit; and acceleration of her balance. Drexel counters that, because Williams was delinquent in her

payments, its declaration of default was not an adverse action requiring notice.

The Equal Credit Opportunity Act requires creditors to notify[2] applicants of their decision "[w]ithin thirty days . . . after receipt of a completed application for credit." 15 U.S.C. § 1691(d)(1). When that decision is an "adverse action," creditors must also provide the applicant with (1) a statement of the action taken; (2) the name and address of the creditor; (3) relevant portions of the ECOA; (4) the name and address of the federal agency that administers compliance with the ECOA; and, (5) either a statement of specific reasons for the adverse action taken or a disclosure of the applicant's right to a statement of specific reasons. 15 U.S.C. § 1691(d)(2); 12 C.F.R. § 1002.9(a)(2).

Drexel's sole contention is that its decision to declare Williams' account in default did not constitute an adverse action requiring notice. As presented in the Second Amended Complaint, Drexel is correct.

An adverse action is defined as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). A declaration of default does not, by itself, change, deny, or revoke any credit arrangement, so by negative implication it is not an adverse action according to the ECOA's provisions. *See* 15 U.S.C. § 1691(d)(6).

Here, Drexel's declaration was simply the announcement that Williams was not complying with the credit agreement. *See Allen v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011) ("After Allen failed to make the last payment due [on a mortgage], she was declared

---

[2] To show a violation of the ECOA's notice requirement, a plaintiff must show that: (1) the defendant is a "creditor" as defined by the statute; (2) the defendant took an adverse action against her; and (3) the defendant failed to provide adequate notice of the reasons for the adverse action. *See* 12 C.F.R. § 1002.2(c)(2)(ii); 12 C.F.R. pt. 1002, supp. I, cmt. 2(c)(2)(ii)-2 (2025). The Parties do not dispute that Drexel is a creditor under the ECOA, and that it did not provide Williams with any notice letters.

in default" and a foreclosure action ensued); *Goldenstein v. Repossessors, Inc.*, 802 F.3d 142, 151 (3d Cir. 2015) (finding Goldenstein had "admittedly defaulted" after failing "to make three monthly payments" on his debt). While the declaration of default might have heralded other alleged adverse actions, it does not, standing alone, meet the ECOA's definition of an adverse action. *See* 15 U.S.C. § 1691(d)(6).

Furthermore, "any action or forbearance relating to an account taken in connection with [that account's current] inactivity, default, or delinquency" does not constitute an adverse action. 12 C.F.R. § 1002.2(c)(2)(ii); 12 C.F.R. pt. 1002, supp. I, cmt. 2(c)(2)(ii)-2 (2025). Here, Drexel declared Williams' account delinquent for her failure to meet the terms of the loan agreement which declaration of default is facially an action "taken in connection" with that status, and therefore not an adverse action requiring notice. *See id.*

However, Williams additionally argues that Drexel's refusal to extend credit and its acceleration of the debt also constitute adverse actions. Drexel makes no argument regarding these allegations, instead offering a perplexing discussion on Williams' attempts to re-enroll. Because the University does not address Williams' actual allegations, it has waived contesting them. *See Laborers' Int'l Union*, 26 F.3d at 398. Accordingly, Drexel's Motion to Dismiss the ECOA claim shall be denied.

**E. Remand is Both Unwarranted and Impossible**

Defendants urge this Court to remand any non-dismissed claims to state court. As Williams correctly notes, remand is only available for cases which were removed from state court. *See* 28 U.S.C. § 1447(c). Because Williams filed this case directly in federal court, remand is not an available remedy. Further, this Court possesses original jurisdiction over

several of her claims. *See Borough of West Miffling v. Lancaster*, 45 F.3d 780, 785-88 (3d Cir. 1995). Therefore, Defendants' Motions shall be denied with respect to remand.

An appropriate order follows.

**BY THE COURT:**

S/ Wendy Beetlestone
**WENDY BEETLESTONE, C.J.**